**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mastro's Restaurants LLC, | ) CV 11-1996-PHX-PGR |
| Plaintiff, | ) |
| | ) **ORDER** |
| v. | ) |
| The Dominick Group LLC, et al., | ) |
| Defendants. | ) |

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 37.)

On December 7, 2011, Plaintiff Mastro's Restaurants LLC ("MR") filed an Amended Complaint ("Complaint") alleging a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), along with several state law claims.[1] (Doc. 30.) Defendants move to dismiss the Lanham Act claim, Count 3, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 37.) They also contend that MR has failed to state a claim against several Defendants on Count 1 and that Counts 4 and 5 must be dismissed because as improperly brought under Arizona law.

MR filed a response opposing the motion. (Doc. 48.) Briefing was completed on February 21, 2012. The Court held oral argument on May 2, 2012.

---

[1] These claims include Breach of Contract—New York common law (Count 1), Breach of the Implied Covenant of Good Faith and Fair Dealing—New York common law (Count 2), Unfair Competition—Arizona common law (Count 4), and Violation of the Right of Publicity—Arizona common law (Count 5). (Doc. 30.)

**I.     Background**

The first Mastro's Steakhouse restaurant opened in Scottsdale, Arizona, in 1999. Over the next eight years, the Mastro family opened six more restaurants in Arizona and California.

In January of 2007, Defendants[2] sold the entire Mastro's Restaurants "Business" to MR for $180 million. The terms of the sale are set forth in an "Asset Purchase Agreement" ("APA"). (Doc. 37, Ex. 1.)

The APA contains several provisions governing the transfer of the intellectual property rights associated with Mastro's Restaurants from Defendants to MR. The purchased assets include "[a]ll Intellectual Property Rights owned, used by, or held for use by any Seller in the Operation of the Business as currently conducted." (*Id.* at 3.) The APA defines "Intellectual Property Rights" as:

> (ii) trademarks, service marks, trade dress, trade names, logos, designs, slogans, Internet domain names and corporate names and registrations, applications for registration and renewals thereof, together with all of the goodwill associated therewith (collectively, "Marks"), . . . , (vi) all rights of privacy and publicity, including rights to use the names, likenesses, voices, signatures and biographical information of real persons, (vii) all other proprietary and intellectual property rights. . . .

(*Id.* at 50.)

Section 5H of the APA states that Defendants are precluded from using or exploiting the transferred "Marks" for any purpose. Specifically, the agreement provides that, "[f]ollowing the Closing, none of the Sellers, any Affiliate of Sellers, the Mastro Parties or any current spouse of the Mastros will . . . directly or indirectly, use or otherwise exploit in any manner, or claim any interest in, the Marks used in the Business." (*Id.* at 25.) In addition, Defendants are prohibited from using the name "Mastro" in connection with a competing business or in any "business that could reasonably be expected to injure the goodwill

---

[2] Defendants include members of the Mastro family and several business entities: The Dominick Group LLC; Dominick's Italian Steakhouse LLC; Mastro Development Company; Mastro Properties, LLC; and DPM Management, Inc.

associated with the 'Mastro' name." (*Id.*)

Finally, the APA contained a three-year non-compete agreement precluding Defendants from directly or indirectly working in connection with another high-end restaurant. (*Id.* at 21.) Although the noncompete agreement has expired, the other terms of the contract continue to preclude Defendants from operating another restaurant using the "Mastro" name or any of the other transferred intellectual property rights, including the goodwill associated with the "Business."

Defendants opened Michael Dominick's Lincoln Avenue Prime Steakhouse ("Dominick's" or "Dominick's Steakhouse") in 2011.

## II. Rule 12(b)(6)

The Federal Rules of Civil Procedure require a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A claim must be plausible, allowing the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008).

## III. Count 3: Lanham Act

Section 43(a) of the Lanham Act creates civil liability for

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or

- 3 -

> as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a)(1)(A).

To establish an unfair competition claim under section 43(a), a plaintiff must establish that the defendant is using a mark confusingly similar to a "valid, protectable trademark" of the plaintiff. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)). Section 43(a) protects unregistered marks that have "acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992).

In Claim 3 of the Complaint, MR alleges unfair competition, false endorsement, and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A). According to MR, "Defendants are knowingly and intentionally misrepresenting and falsely designating to the general public the affiliation, connection, association, origin, source, sponsorship, endorsement and approval of Dominick's Steakhouse by MR in order to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source, approval, endorsement and sponsorship of Dominick's Steakhouse." (Doc. 30, ¶ 102.)

As examples that Defendants misleadingly suggests that their restaurant is affiliated with or endorsed by MR, the Complaint cites Defendants' use of the name "Dominick," which MR characterizes as "a blatant reference to Dominick Mastro, who is closely associated with the Mastro's-brand restaurants"; the name "Mastro" as part of "Mastro Development Company" and "The Mastro Group," which are developing and promoting Dominick's Steakhouse; "signage that is strikingly similar to the signage used for Mastro's Restaurants"; and a photograph of Mastro's Cosmo cocktail as part of Dominick's marketing materials. (*Id.*) MR further contends that Defendants have attempted to "replicate the look and feel of Mastro's Restaurants" and have developed a menu that "directly copies many

signature items from the menus of Mastro's Restaurants."[3] (*Id.*)

Defendants argue that these allegations are inadequate to state a claim under the Lanham Act and that Claim 3 must therefore be dismissed pursuant to Rule 12(b)(6).

As set forth below, the Court finds that MR's Complaint adequately alleges that the mark Dominick's has obtained a secondary meaning and that a likelihood of confusion arises from Defendants's use of the mark in Dominick's Steakhouse.[4]

**A.   MR has sufficiently pleaded that it has a protectable mark in the name Dominick's.**

Defendants use the name Dominick's as a mark for Dominick's Steakhouse. Personal names are included in the class of descriptive marks that do not secure protected trademark status until secondary meaning has attached. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("While personal names used as trademarks are not inherently distinctive, they are treated as strong marks upon a showing of secondary meaning."). "Secondary meaning is the consumer's association of the mark with a particular source or sponsor." *Id.* "The basic element of secondary meaning is . . . the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (citation omitted). Factors considered in determining whether a secondary meaning has been achieved include whether actual purchasers of the

---

[3] While MR refers to its "restaurants," its allegation that Dominick's copies the look and feel of its restaurants clearly refers to a single establishment, Mastro's Steakhouse in north Scottsdale. (*See* Doc. 30, ¶¶ 20–22, 25, 29, 44, 48, 54, 59, 62.)

[4] Having resolved the motion on this basis, the Court need not address the parties' arguments concerning the scope of the protection offered under the Lanham Act and whether MR has sufficiently alleged that the design features of its restaurants are distinctive enough to merit protection as a mark. Likewise, the Court will not specifically address Defendants' argument that MR has failed to allege a Lanham Act violation with respect to the Mastro's mark.

1 product bearing the claimed mark associate the mark with the producer, the degree and
2 manner of advertising under the mark, the length and manner of use of the mark, and whether
3 use of the mark has been exclusive. *Id.* at 1358.

4       In its Complaint, MR sets out several circumstances to support its allegation that a
5 secondary meaning has attached to the Dominick's mark. Principally, MR alleges that
6 Mastro's Restaurants has offered private dining at the north Scottsdale location in "The
7 Dominick Room," and that MR has advertised and promoted this service in various
8 advertisements and marketing materials. (Doc. 30, ¶ 23.) According to the Complaint, this
9 service predates the 2007 APA:

> Mastro's Steakhouse in North Scottsdale offers guests the option of dining in "The Dominick Room," an exclusive private dining room that consumers closely associate with the Mastro's Restaurants' brand. The Dominick Room has been in existence for years (including in the years before MR purchased Mastro's Restaurants in 2007).

13 (*Id.*)

14       MR further alleges that a photograph of Dominick Mastro, the "family patriarch," is
15 prominently displayed in the entryway of every Mastro's Restaurant, and that the image is
16 featured in advertising for Mastro's restaurants. (*Id.*, ¶¶ 20–21.) The Complaint alleges that
17 the photo and the name Dominick Mastro "have long been associated in the minds of
18 consumers with Mastro's Restaurants." (*Id.*, ¶ 22.) Finally, MR alleges that employees of
19 Mastro's Steakhouse are trained about Dominick Mastro's connection to the restaurant so
20 they can answer questions from restaurant patrons about the Dominick photo. (Doc. 30, ¶
21 23.) According to MR, these factors demonstrate that "Dominick's name and likeness are
22 closely affiliated with Mastro's Restaurants" (*id.*, ¶ 24), and therefore the Dominick's mark
23 has obtained secondary meaning.

24       Defendants argue that MR has not used the Dominick's name as a mark and that the
25 name as used by MR has not acquired secondary meaning. (Doc. 37 at 4.) Specifically,
26 Defendants contend that the Complaint does not allege that "The Dominick Room," so
27 named, was in use prior to the APA. (*Id.* at 5.) Defendants further note that MR does not

- 6 -

1  allege that the photographs of Dominick Mastro in its restaurants were labeled with his name
2  prior to the sale or that Defendants display the photograph at Dominick's Steakhouse. (*Id.*
3  at 4.)

4  "Whether a claimed mark has obtained a secondary meaning is a question of fact to
5  be determined by a jury." *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 991 (9th
6  Cir. 2006); *see Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d
7  925, 930 (9th Cir. 2005) (finding a genuine issue of material fact as to whether "yellow cab"
8  had a secondary meaning); *Glassybaby, LLC v. Provide Gifts, Inc.*, No. C11-380 MPJ, 2011
9  WL 2218583, at *2 (W.D.Wash. June 6, 2011) (whether the design of plaintiff's candle
10 holders had achieved a secondary meaning was a question of fact for the jury).

11 Taking MR's allegations as true, as required on a motion to dismiss pursuant to Rule
12 12(b)(6), the Court finds that MR has sufficiently alleged that the name Dominick's obtained
13 a secondary meaning associated with Mastro's Restaurants, particularly from the use of
14 Dominick Mastro's name and image in promoting Mastro's Steakhouse in Scottsdale.
15 Contrary to Defendants' argument, the Complaint, when viewed in the light most favorable
16 to MR, does allege that "The Dominick Room" was in use prior to 2007. (Doc. 30, ¶ 23.) The
17 also Complaint alleges that consumers have associated Dominick Mastro with Mastro's
18 Restaurants. (Doc. 30, ¶ 24.) Moreover, as discussed below, the Complaint alleges that
19 patrons and others have mistakenly assumed an affiliation between Mastro's and Dominick's.
20 This kind of actual confusion "shows at least some amount of secondary meaning." *New York*
21 *State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F.Supp.2d 415, 430 (W.D.N.Y. 2010)
22 (quotation omitted).

23 The Court finds that MR has alleged sufficient facts concerning secondary meaning
24 to survive Defendants' 12(b)(6) motion. *See Vincent v. City Colleges of Chicago*, 485 F.3d
25 919, 925 (7th Cir. 2007)( "The chance that Vincent will succeed in establishing secondary
26 meaning may be slim, but her complaint does not concede the point or demonstrate that proof
27 is impossible, and the pleading therefore cannot be dismissed under Rule 12(b)(6).").
28

- 7 -

**B.     MR has sufficiently pleaded likelihood of confusion with respect to the Dominick's and Mastro's marks.**

A likelihood of confusion exists when a consumer viewing a trademark is likely to purchase the services under a mistaken belief that the services are, or are associated with, the services of another provider. *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996). The confusion must be a probability, not simply a possibility. *Id.*

A "plaintiff is not required to prove the likelihood of confusion at the pleading stage." *Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*, No. CV F 08-0959 LJO DLB, 2008 WL 4723603, at *4 (E.D.Cal. Oct. 24, 2008) (quoting *McDonald's Corp. v. Gunvill*, 441 F.Supp. 71, 73 (N.D.Ill. 1977)). Instead, "[t]he likelihood of confusion is a fact-specific inquiry best left for decision after discovery." *Vulcan Golf, L.L. C. v. Google Inc.*, 552 F.Supp.2d 752, 769 (N.D.Ill. 2008); *see Government Employees Ins. Co. v. Google, Inc.*, 330 F.Supp.2d 700, 704 (E.D.Va. 2004) ("Whether defendants' uses are legitimate fair uses of the trademarks in competition, and whether they create a likelihood of confusion, are fact-specific issues not properly resolved through a motion to dismiss."); *Stanislaus Custodial Deputy Sheriffs' Ass'n v. Deputy Sheriff's Ass'n of Stanislaus County*, CV F 09-1988 LJO SMS, 2010 WL 2218813, at *11 (E.D.Cal. June 1, 2010) (denying motion to dismiss because the court could not "make the factual conclusion at this stage of the proceedings that there was not a likelihood of confusion"); *Visual Changes*, 2008 WL 4723603, at *6 (rejecting defendant's argument that there was no likelihood of confusion, explaining that the defendants' "attack is based on a factual determination not at issue at this pleading stage."); *Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*, No. C-10-4429 EMC, 2011 WL 1225912, at *20 (N.D.Cal. April 1, 2011) ("Consumer confusion is generally a factual determination turning on an array of factors that cannot be made at this stage.").

Courts in this circuit use an eight-factor test to determine the likelihood of confusion. *See Brookfield*, 174 F.3d at 1053–54. These factors include the strength of the mark, relatedness or proximity of the goods or services, similarity of the marks, evidence of actual

1  confusion, marketing channels used, type of goods and the degree of care likely to be
2  exercised by the purchaser, defendant's intent in selecting the mark, and likelihood of
3  expansion in product lines. *Id.* (citing *Sleekcraft*, 599 F.2d at 348–49). The test is "pliant."
4  *Id.* at 1054. Some factors are more important than others, and the relative importance of each
5  factor is case-specific. *Id.*

6  MR's Complaint alleges facts concerning several of the *Sleekcraft* factors, including
7  actual evidence of confusion. "Generally, actual confusion is the best evidence of likelihood
8  of confusion." *Nautilus Group, Inc. v. Icon Health and Fitness, Inc.*, 308 F.Supp.2d 1208,
9  1213 (W.D.Wash. 2003) (citing *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 639
10 (6th Cir. 2002)). The Complaint alleges, for example, that customers seeking to make
11 reservations at Dominick's have mistakenly contacted Mastro's Restaurants in Scottsdale in
12 the belief that the restaurants were affiliated. (Doc. 30, ¶¶ 64–66.) The Complaint also alleges
13 that prospective employees seeking jobs at Dominick's have applied at Mastro's. (*Id.*, ¶ 69.)
14 According to the Complaint, an *Arizona Republic* newspaper article about Dominick's
15 mistakenly referred readers to the Mastro's website and an online publication erroneously
16 stated that Michael Mastro was the president and CEO of Mastro's Restaurants. (*Id.*, ¶¶
17 67–68, 71.) Finally, the Complaint alleges that confusion is evident from comments on
18 restaurant review websites, where customers have assumed a connection between
19 Dominick's and Mastro's Restaurants. (*Id.*, ¶ 70.)

20 Defendants dispute the relevance of MR's evidence of confusion. At this stage of the
21 pleadings, however, MR's allegations of actual confusion are accepted and support a finding
22 that the Complaint adequately alleges likelihood of confusion. *See New York State Elec. &*
23 *Gas Corp.*, 697 F.Supp.2d at 437 ("Although there is authority that isolated instances of
24 confusion . . . [are] insufficient to establish a likelihood of confusion, it bears repeating that
25 this case is in its early stages, and that the only questions before the Court at this juncture are
26 whether NYSEG's complaint is facially sufficient to withstand a motion to dismiss.")
27 (quotations omitted).
28

- 9 -

The Complaint further alleges that Defendants' intent, in choosing the name Dominick's and designing the restaurant's signage, interior features, and menu, was to suggest a connection with MR. (*Id.*, ¶¶ 42–48.) The Complaint alleges that Defendants are intentionally exploiting the goodwill associated with MR. For example, according to the Complaint, members of the Mastro family have suggested to MR's "vendors, customers, prospective employees, and employees that the Mastro family is 'taking over' Mastro's Restaurants." (Doc. 30, ¶ 52.)

Finally, with respect to the proximity and relatedness of the goods, the Complaint notes that Dominick's, as a high-end steak house in Scottsdale, competes directly with Mastro's Steakhouse. (*Id.*, ¶ 49.)

Defendants correctly note that other factors weigh against a finding of confusion—most significantly, the fact that the Mastro's and Dominick's marks are dissimilar, and Dominick's does not use the Mastro's mark to promote its restaurant. However, at this stage of the litigation, the court does not "weigh the evidence to assess" the *Sleekcraft* factors. *Noble Roman's, Inc. v. Brabham Oil Co.*, No. 1:11-cv-135-SEB-DML, 2012 WL 695879, *6 (S.D.Ind. Feb. 29, 2012). Instead, Defendants' "arguments must be deferred to the summary judgment stage of the litigation." *Id.*; *see Glassybaby*, 2011 WL 2218583, at *2 ("Defendants also move to dismiss the complaint for failure to allege facts as to confusion of consumers. This is a question of fact that cannot be determined at the dismissal stage."); *Virginia Polytechnic Institute and State University v. Hokie Real Estate, Inc.*, No. 7:10CV0046, 2011 WL 926862, *8 (W.D.Va. March 15, 2011) ("While the defendant's arguments regarding the dissimilarities between the parties' services may find success on a motion for summary judgment or at trial, the court ultimately agrees with Virginia Tech that a Rule 12(b)(6) motion is not the appropriate vehicle for the court to assess the services offered by the university or compare those services to those offered by the defendant.").

"A dismissal on the pleadings because a likelihood of confusion is impossible from

- 10 -

1 the face of the Complaint is highly unusual, but not unheard of." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:121.25. As the Ninth Circuit explained in *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996), a district court may decide whether a likelihood of confusion exists on the face of the pleadings and dismiss a complaint "[if] the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely."

Unfair competition claims are most frequently dismissed as a matter of law where the goods or services offered by the parties are unrelated. *See Brookfield*, 174 F.3d at 1054 ("Even where there is precise identity of a mark . . . there may be no consumer confusion—and thus no trademark infringement—if the alleged infringer is in a different geographic area or in a wholly different industry.") In *Murray*, the court found no likelihood of confusion where the plaintiff operated a market research firm that conducted videotaped consumer surveys for business clients under the name "America Speaks," while the defendant operated a cable television network called "America's Talking" that produced talk shows and conducted polling surveys for news media. 86 F.3d at 859. The parties shared no customers or potential customers. The court concluded that, "[b]ecause the parties' services are unrelated, there is no likelihood of consumer confusion as a matter of law." *Id.* at 861. Similarly, in *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981), the court dismissed the plaintiff's claim that its "Godzilla" trademark was infringed by the marketing and sale of "Bagzilla," a brand of trash bag. The court noted that, "Sears sells garbage bags. Toho produces or sponsors only literary works and toys." *Id.* at 790.

Courts have also taken into account the parties' geographical locations when assessing confusion. For example, in *Tana v. Dantanna's*, 611 F.3d 767, 780–81 (11th Cir. 2010), the court granted summary judgment in the defendants's favor, finding there was no likelihood of confusion where the plaintiff's restaurant was located in Los Angeles and the defendant's restaurants were in Atlanta. *See Brookfield*, 174 F.3d at 1054 (citing cases).

- 11 -

In this case, by contrast, Mastro's Steakhouse and Dominick's Steakhouse are both upscale restaurants in Scottsdale, offering the same goods and services in the same market. They are geographically proximate and share a customer base. As alleged in the Complaint, these circumstances, and Defendants' use of the name Dominick, have led to actual confusion among restaurant patrons. (*See* Doc. 30, ¶¶ 64–70.)

Finally, courts have dismissed claims for failure to allege a likelihood of confusion where the defendant specifically disclaimed any affiliation with the plaintiff's goods or services. *See Matrix Essential, Inc. v. Emporium Drug Mart, Inc.* 756 F.Supp. 280, 282 (W.D.La. 1991) (explaining that "a disclaimer expressly declaring that the seller is 'not affiliated' with the owner of the trademark has been held to be an effective means of preventing confusion in the minds of consumers as to affiliation with the owner of the trademark in question"); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610–11 (6th Cir. 2009) (granting motion to dismiss where the defendant's advertising made it clear he was no longer associated with plaintiff's business); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10cv974 DMS (CAB), 2011 WL 1630809, at *3 (S.D.Cal. 2011) (finding that plaintiff failed to allege facts sufficient to demonstrate likelihood of confusion where defendant clearly identified plaintiff as the manufacturer); *Klein-Becker USA, LLC v. Product Quest Mfg., Inc.*, 429 F.Supp.2d 1248, 1258 (D.Utah 2005) (finding no likelihood of confusion where defendant's advertising displays contained disclaimers that its products were not manufactured or distributed by plaintiff).

In the present case, as alleged in the Complaint, Defendants have done nothing to reduce the likelihood of confusion by clarifying that Dominick's is not affiliated with Mastro's Restaurants. Instead, the Complaint alleges that Defendants, in designing and operating Dominick's, are attempting to capitalize on its perceived association with Mastro's Restaurants.

In sum, the Complaint "adequately alleges likelihood of confusion to defeat

challenges at the pleading stage." *Stanislaus*, 2010 WL 2218813, at *11; *see Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004) ("At an appropriate time, [defendant] might well prove that consumer confusion was unlikely. But on a motion under Rule 12(b)(6) the inquiry is into the sufficiency of the pleading, not of the evidence."); *GNI Waterman LLC v. A/M Valve Company LLC*, CV F 07-0865 LJO TAG, 2007 WL 2669503, at *9 (E.D.Cal. September 7, 2007).

## IV.     Count 1: Breach of Contract

Count 1 of the Complaint alleges that Defendants breached section 5H of the APA, which precludes "Sellers" and their "Affiliates" from using the name Mastro in connection with a competing business. (Doc. 30, ¶¶ 81–92; *see* Doc. 37, Ex. 1 at 25.) Defendants argue that Dominick's Italian Steakhouse LLC and Mastro Development Company are not parties to the APA or bound by its provisions and therefore MR's breach of contract claim against them must be dismissed. (Doc. 37 at 13–14.)

MR contends that it has sufficiently alleged that Dominick's Italian Steakhouse LLC and Mastro Development Company are "Affiliates" of the "Sellers" as defined by the APA. (Doc. 48 at 15.) The Court agrees. The Complaint alleges that Dominick's Italian Steakhouse LLC and Mastro Development Company are "controlled by" DPM Management, Inc., and thus are "Associates" under the APA. (Doc. 30, ¶¶ 8–9.) The Court accepts these factual allegations as true for the purposes of Rule 12(b)(6). *See Silvas*, 514 F.3d at 1003. Therefore, the Complaint sufficiently alleges that Dominick's Italian Steakhouse LLC and Mastro Development Company are "Affiliates" and bound by the provisions of section 5H.

## V.      Counts 4 and 5: Unfair Competition and Violation of the Right of Publicity

Defendants contend that MR has improperly alleged Counts 4 and 5 under Arizona law. (Doc. 37 at 14–15.) According to the choice of law provisions of the APA, New York law governs "[a]ll issues and questions concerning the construction, validity, enforcement and interpretation" of the APA. (Doc. 37, Ex. 1 at 58.) MR argues that because Counts 4 and

sound in tort law, they are not subject to the choice of law provision of the APA and therefore Arizona law applies. (Doc. 48 at 16.) The Court agrees.

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Under the governing Arizona choice of law principles, courts are required to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties. *Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*, No. CV-11-8013-PCT-PGR, 2011 WL 2692959, at *3–4 (D.Ariz. July 12, 2011); *see Winsor v. Glasswerks PHX, L.L.C.*, 204 Ariz. 303, 307, 63 P.3d 1040, 1044 (Ariz. App. 2003). Arizona is the state with the most significant relationship to the occurrence and the parties, so Arizona law applies and the tort claims alleged in Counts 4 and 5 are properly brought under Arizona law, notwithstanding the APA's choice of law provision.

## VI. Conclusion

For purposes of Defendants' motion to dismiss under Rule 12(b)(6), the Court accepts as true the allegations set forth in the Complaint and construes them in the light most favorable to MR. With respect to Count 3, the Court concludes that the allegations set forth in the Complaint are sufficient to state a plausible claim for relief under the Lanham Act. Defendants' challenges to Counts 1, 4, and 5 are also denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 37) is **denied**.

DATED this 11th day of June, 2012.

Paul G. Rosenblatt
United States District Judge

- 14 -